UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MERIL MAMAN,

    Plaintiff,

v.                                          Case No. 04-CV-74433-DT

CAROL JENIFER, District Director, United
States Citizenship and Immigration Services,
and LISA JONES, in her individual capacity,

    Defendants.
                                    /

**ORDER GRANTING DEFENDANTS' "MOTION TO DISMISS"**

Pending before the court is Defendants' "Motion to Dismiss." This motion has been fully briefed and the court held a hearing in this matter on April 13, 2005. For the reasons stated below, the court will grant Defendants' motion.

**I. BACKGROUND**

Prior to filing his application for naturalization, Plaintiff Meril Maman had been a lawful permanent resident of the United States, having lived here for over nine years. (Pl.'s Am. Compl. at 1.) Plaintiff avers that on or around September 2002, he filed his petition for naturalization. (*Id.* at ¶ 6.) He further asserts that in July 2003, he "met all requirements, appeared for [an] interview and passed the required tests." (*Id.*) During his interview, Plaintiff disclosed to Officer Steven Killmar that he had shoplifted when he was thirteen years old. (Defs.' Mot. at 1.) Plaintiff claims that "a decision [on his application] was withheld presumably because [of this] shoplifting inciden[t]." (Pl.'s Am. Compl. at ¶ 6.) Plaintiff avers that he "had no recollection of any arrest or going to court

on the charges." (*Id.*)  Officer Killmar requested that Plaintiff produce any police or arrest records and any court disposition records.  (Pl.'s Compl. at Ex. 1; Defs.' Mot. at 1.)  Plaintiff submitted a document from the Canton Township Police Department stating that he had not been arrested by that department and Plaintiff avers that "there was no record found with the local court, and the local court declined to give him any letter or clearance."  (Defs.' Mot. at 1; Pl.s' Am. Compl. at ¶ 7.)

On November 7, 2003, Plaintiff appeared for an interview with Defendant Lisa Jones, a Citizenship and Immigration Services (CIS) adjudication officer.  Plaintiff asserts that Defendant Jones asked him to bring to the interview: his "driver's history record from [the] Secretary of State; certified letter from the court that there is no record of any court appearances by [Plaintiff] for any criminal offenses; and certified copies of the fine imposed for [Plaintiff's] shoplifting offense as well as documentation from the store at which the offense occurred."  (Pl.'s Am. Compl. at ¶ 8.)  Defendant Jones claims that Plaintiff told her that he did not provide court records because he did not know from which court to get them.  (Defs.' Mot. at 2.)  Plaintiff states that he submitted the requested records and "recollects that he was also able to obtain a letter from the local court stating there is no record and submitted the same."  (Pl.'s Am. Compl. at ¶ 9.)  Plaintiff also avers that "the store indicated to . . . Plaintiff that they had no information and gave a phone number to communicate to the officer if she wanted to talk to the store."  (*Id.*)  Plaintiff claims that "since there was no court disposition or record, Defendant Jones's request to provide her [with] 'certified copies of the fine imposed for [Plaintiff's] shoplifting offense as well as documentation from the store which this offense occurred' was absurd."  (*Id.* at ¶ 10.)  Plaintiff states that "he provided

the information to . . . Defendants to the best of his recollection as a child." (*Id.* at ¶ 11.) In his First Amended Complaint, Plaintiff claims that more than 500 days have passed since his first interview with an immigration officer in July 2003 and 365 days have passed since his re-examination, and in failing to adjudicate his petition sooner, Defendants have violated 8 CFR § 310.5.  (*Id.* at ¶ 13.)

In Count II of his First Amended Complaint, Plaintiff claims that he "has been deprived of his right to become a United States citizen by the unreasonable and absurd demands and delays of Defendant under the color of law, in violation of [the] holding in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)." (*Id.* at ¶ 21.)  In Count III of Plaintiff's First Amended Complaint, he invokes the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 USC § 2412(d), in his request for costs and attorneys' fees against both defendants.  (*Id.* at ¶ 31.)

Subsequent to filing his complaint, Defendants approved Plaintiff's naturalization application and Plaintiff has since become a U.S. citizen.  (Defs.' Mot. at 2.)  In addition, since filing his original complaint, Plaintiff has stipulated to the dismissal of Count I as listed in that complaint.  Plaintiff is going forward with a claim against Defendant Jones in her individual capacity for unreasonably delaying adjudication of his application and his request for attorneys' fees under the EAJA against both defendants.  On February 17, 2005, Defendants filed their "Motion to Dismiss."

3

## II.  STANDARD

### A.  Fed. R. Civ. P. 12(b)(6)

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.  *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *Kline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995). When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor.  *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations.  *Wright*, 58 F.3d at 1138; *Columbia Natural Res., Inc.*, 58 F.3d at 1109.

Though decidedly liberal, this standard of review does require more than the bare assertion of legal conclusions.  *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1100-01 (6th Cir. 1995).  The complaint should give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994).  "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'"  *Lillard*, 76 F.3d at 726 (emphasis in original) (quoting *Scheid*

4

*v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

### III.  DISCUSSION

#### A.  Bivens Action

In *Bivens*, the Supreme Court held that suits for damages could be maintained against federal officials for violations of the Constitution.  A *Bivens* claim is not directly applicable against the United States or its agencies.  Rather, the purpose of a *Bivens* action is to deter the individual officer.  *See, e.g.*, *F.D.I.C. v. Meyer*, 510 U.S. 471, 484-85 (1994); *Humphrey v. U.S. Probation Dep't*, 221 F.3d 1334, 2000 WL 876773, at * 2 (6th Cir. 2000).

#### 1.  Alleged Constitutional or Statutory Violation

In order to successfully pursue a *Bivens* action, a plaintiff must show that the defendant was acting under color of federal law.  *Bivens*, 403 U.S. at 394.  In his First Amended Complaint, Plaintiff argues that he has a "constitutional or statutory right to become a United States Citizen without unreasonable delay [and that] he was unable to vote in the 2004 Presidential election." (Pl.'s Am. Compl. at ¶ 19.)  Defendants argue that Plaintiff has failed to state a claim under *Bivens* because "there is no constitutional right to become a naturalized United States citizen, let alone a right to be granted such

5

citizenship 'without reasonable delay.'" (Defs.' Mot. at 4.) In addition, Defendants assert that Plaintiff has no statutory right to adjudication of his application within a particular time, but only a statutory remedy for delayed adjudication of Plaintiff's petition. (Defs.' Reply at 5.) The court agrees. There is no constitutional right to be granted United States citizenship. *Tutun v. U.S.*, 270 U.S. 568, 578 (1926). Instead:

> the opportunity to become a citizen of the United States is said to be merely a privilege, and not a right. It is true that the Constitution does not confer upon aliens the right to naturalization. . . . The opportunity having been conferred by the Naturalization Act, there is a statutory right in the alien to submit his petition and evidence to a court, to have that tribunal pass upon them, and, if the requisite facts are established, to receive the certificate.

*Tutun*, 270 U.S. at 578. "No alien has the slightest right to naturalization unless all statutory requirements are complied with . . . ." *United States v. Ginsberg*, 243 U.S. 472, 475 (1917).

Having established that there is no constitutional right to be granted United States citizenship within a certain time, the court must turn to the issue of whether Plaintiff has a statutory right to be granted United States citizenship within a particular parameter of time. Plaintiff relies on 8 CFR § 310.5 in support of his contention that Defendants violated his statutory right to be have his naturalization petition decided within a reasonable amount of time. Pursuant to 8 CFR § 310.5(a):

> (a) After 120 days following examination. An applicant for naturalization may seek judicial review of a pending application for naturalization in those instances where the Service fails to make a determination under section 335 of the Act within 120 days after an examination is conducted under part 335 of this chapter. An applicant shall make a proper application for relief to the United States District Court having jurisdiction over the district in which the applicant resides. The court may either determine the issues brought before it on their merits, or remand the matter to the Service with appropriate instructions.

6

> (b) After denial of an application. After an application for naturalization is denied following a hearing before a Service officer pursuant to section 336(a) of the Act, the applicant may seek judicial review of the decision pursuant to section 310 of the Act.

8 CFR § 310.5. This statutory provision provides a *remedy* where adjudication of a naturalization petition is delayed, which actually undermines Plaintiff's *Bivens* action, as the existence of a statutory remedy is a special factor that makes Plaintiff's *Bivens* action untenable.

### B. Bivens Special Factors

> A money damages remedy against federal officials for constitutional torts:
>
> will not be devised by the courts where 'special factors' counse[l] hesitation in the absence of affirmative action by Congress. *Bivens,* supra, at 396. Such 'special factors' include the existence of statutory mechanisms giving meaningful remedies against the United States, even though those remedies do not provide "complete relief" to the claimant." *Bush v. Lucas,* 462 U.S. 367 (1983). Thus, the courts must give appropriate deference to indications that congressional inaction has not been inadvertent, and should not create *Bivens* remedies when the design of a Government program suggests that Congress has provided what it considers to be adequate remedies for constitutional violations that may occur in the course of the program's administration.

*Schweiker v. Chilicky*, 487 U.S. 412, 412-13 (1988). In *Schweiker*:

> The respondents were three individuals whose disability benefits under Title II were terminated pursuant to the CDR [continuing disability review] program in 1981 and 1982. Respondents Spencer Harris and Dora Adelerte appealed these determinations through the administrative process, were restored to disabled status, and were awarded full retroactive benefits. Respondent James Chilicky did not pursue these administrative remedies. . . . Because the determinations in these three cases occurred before the 1983 emergency legislation was enacted, respondents experienced delays of many months in receiving disability benefits to which they were entitled.

*Schweiker*, 487 U.S. at 417. The *Schweiker* Court held that "when the design of a Government program suggests that Congress has provided what it considers adequate

remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Id.* at 423. The *Schweiker* Court also held that "because petitioner's claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, it would be inappropriate for this Court to supplement that regulatory scheme with a new nonstatutory damages remedy." *Id.* at 422.

Plaintiff seeks to distinguish *Schweiker* from the instant case by arguing that the remedy of filing a lawsuit "can not be considered comprehensive. This also requires Plaintiff to spend money to enforce his right." (Pl.'s Resp. at 14.) However, the *Schweiker* Court noted in its holding that the *Bush* court refused to create a *Bivens* action even though it assumed a First Amendment violation and acknowledged that "existing remedies do not provide complete relief for the plaintiff." *Schweiker,* 487 U.S. at 423 (quoting *Bush*, 462 U.S. at 388). In addition, Plaintiff cites the *Bell v. Hood*, 327 U.S. 678, 684 (1946) holding that "it is well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts *may use* any available remedy to make good the wrong done." *Id.* at 684. (emphasis added). However, *Bell* did not posit that federal courts are *required* to impose a remedy to "make good the wrong done." *Id.*

### C.  Qualified Immunity

8

Generally, public officials performing discretionary functions are entitled to qualified immunity and are protected from defending a § 1983 action when their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether qualified immunity attaches to an officer's conduct is a legal question, to be determined by the judge prior to trial. *Walton v. City of Southfield*, 995 F.2d 1331, 1335 (6th Cir. 1993).

To assist courts in determining when qualified immunity is applicable, the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), established a two-part inquiry. First, a court must decide whether the alleged facts, taken in the light most favorable to the injured party, establish the violation of a constitutional right. *Id.* at 201. If a constitutional right is not implicated, the inquiry ends and the official is entitled to qualified immunity. *Id.* If, however, a constitutional right is implicated, the next inquiry is "whether the right was clearly established." *Id.* This examination "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* Furthermore, "the contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Saucier*, 533 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*; *see Wilson v. Layne,* 526 U.S. 603, 615 (1999). It is not necessary, however, "that the very actions have been previously held unlawful but,

9

given the preexisting law, the unlawfulness of the conduct must have been apparent."
*Barton v. Narrod*, 106 F.3d 1289, 1293 (6th Cir. 1997) (citation omitted).

### 1.  Constitutional Violation

Plaintiff has not alleged a violation of a constitutional nor statutory right, as discussed above.  Therefore, Plaintiff is unable to establish that qualified immunity should not attach to Defendant Jones.  The court need not go further in a qualified immunity analysis, as Plaintiff is unable to meet this first step, but the court will briefly touch on the issue of a clearly established right.

### 2.  Clearly Established Right

> In the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself.  In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law.  For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.

*Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988).  Thus, even if Plaintiff were able to establish that Defendants violated a constitutional or statutory right to have his naturalization petition adjudicated within a reasonable amount of time, Plaintiff has not presented nor has the court located case law that suggests that this right is clearly established.

### D. Equal Access to Justice Act (EAJA)

Pursuant to 28 U.S.C. § 2412(d)(1)(A):

> A court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

Defendant argues that Plaintiff is "not eligible for EAJA fees and costs against either defendant because he is not a prevailing party. Moreover, with regard to his *Bivens* action against [D]efendant Jones, EAJA fees would not be available even if she were a prevailing party, as a *Bivens* action is not an action against the United States." (Def.'s Mot. at 13.)

A "'prevailing party' is one who has been awarded some relief by a court . . . Both judgments on the merits and court-ordered consent decrees create a material alteration of the parties' legal relationship and thus permit an award." *Buckhannon Bd. and Care Home, Inc. v. West Virginia,* 532 U.S. 598, 598 (2001); *Chambers v. Ohio Dep't of Human Services*, 273 F.3d 690, 691 (6th Cir. 2001); *Toms v. Taft*, 338 F.3d 519, 528 (6th Cir. 2003).

Plaintiff's petition for naturalization was processed and Plaintiff was naturalized as a United States citizen on February 10, 2005. As such, there was no court-ordered change in the legal relationship between Plaintiff and CIS.

Moreover, the EAJA defines the United States as including "any agency and any

official of the United States action in his or her *official capacity*." 28 U.S.C. § 2412(d)(2)(C). (emphasis added). "Federal agents are sued in their individual capacities rather than their official capacities in *Bivens* actions; thus, a Bivens action is not a 'civil action . . . against the United States' under § 2412(d)." *Kreines v. United States*, 33 F.3d 1105, 1109 (9th Cir. 1994). Accordingly,

### IV.  CONCLUSION

IT IS ORDERED that Defendants' "Motion to Dismiss" [Dkt. # 7] is GRANTED.


 s/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  April 28, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 28, 2005, by electronic and/or ordinary mail.

 s/Lisa G. Teets  
Case Manager and Deputy Clerk  
(313) 234-5522